UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kyle J. Williams,

    Petitioner,

    v.

Warden, Madison Correctional Institution,

    Respondent.

Case No. 2:22-cv-4125

Judge Michael H. Watson

Magistrate Judge Bowman

## OPINION AND ORDER

Kyle J. Williams ("Petitioner") objects to aspects of the Order and Report and Recommendations ("R&R") issued by the Magistrate Judge in this habeas corpus case. Obj., ECF No. 18. For the following reasons, the Court **OVERRULES** Petitioner's objections and **ADOPTS** the R&R.

### I.    BACKGROUND

In May 2018, Petitioner was charged with three counts of rape. R. 5, ECF No. 7. Petitioner proceeded to trial on all three counts. *State v. Williams*, No. 19AP-824, 2021 WL 3877939, at *7 (Ohio Ct. App. Aug. 31, 2021). Several witnesses testified on behalf of the State, including the victim and Nurse Stevens (a Sexual Assault Nurse Examiner who performed a physical exam of the victim). *Id.* at *1–7. Only Petitioner testified for the defense. *Id.* Following deliberations, the jury found Petitioner guilty on all three counts of rape. *Id.* at * 7. Petitioner moved for a new trial, and the state trial court denied the motion. *Id.* The state

trial court sentenced Petitioner to nine years' imprisonment on each count, to run concurrently, imposed a fine, ordered restitution, and classified Petitioner as a sex offender. *Id.*

Petitioner appealed to the state appellate court, which affirmed Petitioner's conviction. *See generally, id.* Petitioner appealed to the Supreme Court of Ohio, but that court declined to exercise jurisdiction over the appeal. *State v. Williams*, 178 N.E.3d 529 (Table) (Ohio, 2021).

Petitioner now seeks habeas relief. Pet., ECF No. 1. In his Petition, Petitioner argues that his trial counsel was constitutionally ineffective. *Id.*

## II. ORDER AND REPORT AND RECOMMENDATION

Pursuant to the Court's General Orders, Magistrate Judge Bowman issued an R&R on Petitioner's Petition. R&R, ECF No. 16. The R&R recommends dismissing the Petition on the merits. *Id.* Petitioner had also moved to expand the record, and the magistrate judge granted in part and denied in part that motion. *Id.*

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), the Court must modify or set aside the magistrate judge's order on expanding the record if it "is clearly erroneous or is contrary to law." In contrast, the Court reviews de novo those portions of the R&R on the Petition to which Petitioner has timely objected. Fed. R. Civ. P. 72(b).

## IV. ANALYSIS

In response to the R&R, Petitioner objects to the magistrate judge's order denying the motion to expand the record, to the recommendation that the Petition be dismissed, and to the recommendation that Petitioner not be granted a certificate of appealability. Obj., ECF No. 18.

### A. Motion to Expand the Record

Petitioner argues that he needs to expand the record to demonstrate that the state appellate court made an unreasonable determination of the facts. According to Petitioner, the state appellate court determined that Nurse Stevens's report (the "Report") contained her opinions on causation. Petitioner represents that the Report did *not* contain such opinions and, therefore, the state appellate court unreasonably determined that they did. Thus, Petitioner contends that he needs to expand the record to include the Report so that this Court can understand why the state appellate court's determination was unreasonable.

The Court disagrees. Contrary to Petitioner's argument, the state appellate court did *not* determine that the Report contained Nurse Stevens's opinions on causation. Instead, the state appellate court offered the following discussion of the Report:

> Although the nurse's records as disclosed did in fact reflect "Toluidine blue uptake noted," and repeated with regard to a picture from the vaginal stain examination that "Tb dye up[t]ake noted," . . . some of the nurse's testimony (including particularly her more generalized statements explaining fight, flight, or freeze responses and her

> experience with other patients' reporting lags), did go beyond the contours of her records as apparently timely shared with the defense.

*Williams*, 2021 WL 3877939, at *16 (internal citations omitted). True, the state appellate court did not explicitly state that causation opinions were *not* included in the Report, but neither did it say that causation opinions *were* included. Because the state appellate court did not determine that the Report contained causation opinions, that non-determination could not have been unreasonable. In other words, even assuming that Petitioner is correct that the Report does not contain Nurse Stevens's opinions on causation, Petitioner cannot show that the state appellate court unreasonably determined that the Report did and, thus, the Court need not review the Report.

Relatedly, Petitioner contends that his claims should be reviewed de novo, rather than under the deferential Antiterrorism and Effective Death Penalty Act ("AEDPA") standard, because the state appellate court unreasonably determined the facts related to Nurse Stevens's report. *E.g.*, Obj. 6–8, ECF No. 18. For the reasons just explained, that argument fails.

Accordingly, the objection related to the motion to expand the record is **OVERRULED**.

**B.   Ineffective Assistance of Counsel**

Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner's only ground for relief is that his trial counsel was constitutionally ineffective. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984), and requires proof of deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (citation omitted).

As for the first prong of the *Strickland* test, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. For courts examining the performance prong, the Supreme Court of the United States has instructed as follows:

> Judicial scrutiny of counsel's performance must be highly deferential . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal quotation marks and citations omitted).

The prejudice prong of *Strickland* requires proof that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The "*Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690). Further, under AEDPA,

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential" . . . and when the two apply in tandem, review is "doubly" so[.] The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (internal citations omitted).

With this framework in mind, the Court turns to Petitioner's alleged instances of ineffective assistance of counsel.

Petitioner divides the ineffective assistance claim into several sub-parts. That said, all the sub-parts make the same argument: that trial counsel was constitutionally ineffective for failing to object to certain testimony and argument. Petitioner believes his trial counsel should have objected to the following: parts of Nurse Stevens's testimony, alleged hearsay and opinion testimony, and alleged prosecutorial misconduct. *E.g.*, Obj. 6–41, ECF No. 18. Petitioner also argues

that the cumulative effect of all these "failures" amounts to ineffective assistance of counsel.

The state appellate court offered the following analysis of Petitioner's ineffective assistance of counsel claims:

> Mr. Williams has the burden of showing both that his trial counsel fell beneath "an objective standard of reasonable representation," and that, under "the same deferential standard" as for plain error, there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." . . . "In evaluating allegations of deficient conduct by counsel, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" . . .
>
> Many of the objections that Mr. Williams now proposes in hindsight over the course of his briefing to us would not have had a reasonable opportunity for success, and might have underscored the testimony that he posits here as significant. And even had Michelle's testimony about the message received by her husband the evening of the event (before she spoke with [the victim] the next day) been excluded, along with such part of the nurse's expert testimony that arguably went beyond the bounds of her records, we see no reasonable probability that the jury's result would have been different than it was. "Mr. Williams was represented by two retained lawyers," including "a very experienced criminal defense lawyer admitted to the bar in 1985," and they "were on his case from start to finish." . . . Based on the trial record that is before us, he did not receive ineffective assistance of counsel. We overrule Mr. Williams's seventh assignment of error.

*Williams*, 2021 WL 3877939, at *17–18 (internal citations omitted).

Petitioner cannot show that the state appellate court's conclusion was unreasonable. First, even assuming that, had trial counsel made the now-desired objections, the trial court would have sustained them, Petitioner cannot show that his counsel's performance fell below an objective standard of

reasonableness. As a matter of trial strategy, there are many reasons why an attorney might not make a meritorious objection. *See Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006) (observing that "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment"). For example, the attorney may want to cross-examine on the allegedly objectionable testimony, or she may be concerned that repeated objections would annoy the jury or draw more attention to unfavorable evidence or argument. Thus, the state court was not unreasonable in declining to find the "failures" to object were the result of deficient performance, rather than trial strategy.

Moreover, given the strength of the prosecution's case (and given that none of Petitioner's now-proposed objections is so clearly meritorious or is the allegedly problematic testimony or argument so prejudicial), Petitioner cannot show prejudice. Petitioner disagrees because, in his view, this case a "he said/she said" case in which the prosecution had a weak case and, without the allegedly improper evidence, no reasonable jury would have believed the victim over Petitioner. Petitioner understates the strength of the prosecution's case. Even disregarding the allegedly improper evidence, the jury would have had, among other things, the following on which to base a guilty verdict: (1) the victim's testimony, which was detailed and remained generally consistent over

time;[1] (2) a text exchange between the victim and Petitioner the night of the rape in which the victim told Petitioner that she "felt forced to have sex" and that she "said no more than twice"; and (3) much of Nurse Stevens's testimony and her report, including her testimony that she found bruising and redness on the victim's neck and extremities and evidence of vaginal injuries.[2] *Williams*, 2021 WL 3877939, at *1–7. Given the strength of this evidence, it was not unreasonable for the state appellate court to conclude that there was no reasonable probability the outcome would have been different if trial counsel had made the desired objections.

Petitioner's complaints about Nurse Stevens's testimony warrant a more detailed discussion. Petitioner argues that Nurse Stevens provided opinion testimony that exceeded the scope of her report and that trial counsel failed to object. In support of this argument, Petitioner cites to two cases he believes favor his position: *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001) and *King v. Evans*, 621 F. Supp. 2d 850 (N.D. Cal. 2009).

---

[1] Petitioner makes too much of the small inconsistencies in the victim's story. For example, Petitioner emphasizes that, at different times, the victim had different views on whether Petitioner "could tell" she wasn't enthusiastic about giving him a back rub. *E.g.*, Obj. 32, ECF No. 18 (citing trial testimony). Of course, a jury would be free to consider these types of inconsistencies when weighing the victim's testimony. But Petitioner's argument that these small changes dramatically undercut the victim's credibility is unpersuasive.

[2] Similarly, Petitioner overstates the importance of the photographs of the victim's injuries. In Petitioner's view, the photographs do not show the injuries Nurse Steven's said she observed. *E.g.*, Obj. 34–35. Even assuming Petitioner's characterization of the photographs is correct, a reasonable jury could have believed Nurse Steven's explanation that "[i]t's difficult to take photos on people's skin sometimes." R. 820, ECF No. 7-2.

The citation to these cases fails to persuade. The question on habeas review is whether the state appellate court's decision is contrary to or an unreasonable application of "clearly established law" as decided by the *Supreme Court*, not inferior courts. See *Lundgren v. Mitchell*, 440 F.3d 754, 762–63 (6th Cir. 2006) (citations omitted). Thus, even if *Lindstadt* and *King* were factually on-point, that the state appellate court did not follow them does not make the state appellate court's conclusion "contrary to" or an "unreasonable application of" clearly established law.

Moreover, *Lindstadt* and *King* are *not* factually on-point. True, both found ineffective assistance of counsel when trial counsel failed to adequately challenge a medical expert. *Lindstadt*, 239 F.3d at 198–205; *King*, 621 F. Supp. 2d at 858–62. But the similarities end there. In *Lindstadt*, the counsel's ineffectiveness stemmed from his "failure to consult an expert, failure to conduct any relevant research, and failure even to request copies of the underlying studies relied on by [the expert]." *Lindstadt*, 239 F.3d at 202. Similarly, in *King* the court found ineffective assistance because the trial counsel "failed to seek the assistance of a medical expert" and admitted he had no tactical reason for such a failure. *King*, 621 F. Supp. 2d at 859. In other words, neither court found ineffective assistance because trial counsel failed to object to a discovery violation, as alleged here. At bottom, Petitioner's citations to *Lindstadt* and *King* fail to persuade.

In sum, the state appellate court's decision was not unreasonable.

Petitioner disagrees, arguing that the state appellate court's decision was unreasonable for a few reasons. First, Petitioner argues that the state appellate court used the wrong standard (a "plain error" standard) when it evaluated the ineffective assistance of counsel claim. Not so. In its discussion of the ineffective assistance claim, the state appellate court compared the *Strickland* standard to the plain-error standard and observed that many of Petitioner's proposed objections "would not have had a reasonable opportunity for success." *Williams*, 2021 WL 3877939, at *18. However, the state appellate court also outlined the *Strickland* standard and considered the ineffective assistance claim under the same. *Id.* at *17–18. The statements about the plain-error standard and the likelihood of success of Petitioner's proposed objections was part of the discussion under the *Strickland* standard, not an implicit application of a new standard. *Id.* Thus, the "wrong standard" argument fails.

Petitioner next argues that the state appellate court incorrectly applied *Strickland*. Petitioner asserts that, when conducting a *Strickland* analysis, a court should consider the strength of the prosecution's case (because a defense counsel error is probably more prejudicial if the prosecution's case is otherwise weak). *E.g.*, Obj. 12, EF No. 18. Petitioner argues that the state appellate court failed to account for the overall weakness of the prosecution's case and, therefore, misapplied *Strickland*. *Id.*

This argument fails. As explained above, Petitioner underestimates the strength of the evidence against him. This case is not, as Petitioner would frame

it, a "he said/she said" case with no corroborating evidence. Thus, Petitioner's argument that the state appellate court failed to account for the "weakness" of the prosecution's case falls flat.

Finally, Petitioner argues that the state appellate court failed to consider the cumulative effect of trial counsel's alleged errors and, as a result, unreasonably applied *Strickland*. This argument falls flat. Although somewhat differently framed, the state appellate court *did* consider Petitioner's "cumulative error" argument as follows:

> "Under the doctrine of accumulated error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal." . . . "Errors which are separately harmless can, when considered together, violate an accused's right to a fair trial." . . .
>
> Mr. Williams did not receive a perfect trial. The prosecutor's statement of personal belief on what the evidence showed was wrong; the nurse's testimony could have been limited somewhat; the objection during Michelle's testimony (with the resulting court instruction to the witness) could have come earlier. But, on our review of the record as a whole, he did receive a fair trial. The jury saw [the victim] testify and give her account under vigorous cross-examination. And they saw Mr. Williams testify and provide his version of events (that did not reflect what Mr. Crook said that Mr. Williams had told him about [the victim] being the sexual aggressor who "attacked him," but that did include exploration as to the context in which [the victim] had said no, and did include his having felt "used" when he learned that [the victim] had departed). And while the physical evidence was not "definitive," . . . Mr. Williams does not argue that the nurse's description of redness, bruising, and abrasions should have been excluded. No trial errors, alone or in combination, deprived Mr. Williams of his rights to a fair trial. We overrule the eighth assignment of error.

*Williams*, 2021 WL 3877939, at *18 (internal citations omitted). Thus, Petitioner's argument that the state appellate court failed to consider the cumulative effect of the "errors" is unpersuasive.

At bottom, Petitioner's ineffective assistance of trial counsel claim fails.

### V. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court now considers whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1).

When a claim has been denied on the merits, a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

The Court is not persuaded that reasonable jurists would debate the dismissal of this action. Therefore, the Court will not issue a certificate of appealability.

Petitioner disagrees with this result. Petitioner argues that *Lindstadt* and *King* (the cases discussed above that address ineffective assistance of counsel and medical opinion testimony) demonstrate reasonable grounds for debate.

This argument fails to persuade. Although Petitioner points to two out-of-circuit cases that, on similar but meaningfully different facts, reached a different result, the Court is not convinced that reasonable jurists who considered *this* case would debate the dismissal of the Petition.

The Court therefore **DECLINES** to issue a certificate of appealability.

## VI. CONCLUSION

For these reasons, Petitioner's objections are **OVERRULED**. The R&R is **ADOPTED**. The Clerk is **DIRECTED** to enter judgment for Respondent and close the case.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**